IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| KEVIN T. JONES, | * | Criminal No. MJG-13-0288 |
| Defendant. | * | |

...oOo...

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THE COURT'S DENIAL OF DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Bonnie S. Greenberg and Jason D. Medinger, Assistant United States Attorneys for said District, hereby submits this response in opposition to the Defendant's motion to reconsider the denial of his motion to suppress (ECF No. 85). As detailed below, the motion should be denied.

## I. INTRODUCTION

On June 6, 2013, a grand jury sitting in the District of Maryland indicted the defendant Kevin Jones in a one-count indictment for being in possession of a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g).

On August 7, 2013, Defendant Jones filed a motion to suppress evidence. On November 22, 2013, the Honorable Ellen L. Hollander conducted an evidentiary hearing on the Defendant's motion. After hearing from the witnesses, Judge Hollander found the Government's witnesses credible and denied the suppression motion.

Defendant Jones proceeded to trial in this matter on December 16-18, 2013. After the

1

jurors could not reach a unanimous verdict, the Court declared a mistrial. This matter is currently set to be retried May 12-15, 2014.

In anticipation of retrial, the Defendant has filed a motion to reconsider Judge Hollander's denial of his suppression motion. The sole argument made by the Defendant is that this Court should reverse the findings of Judge Hollander based on isolated hearsay evidence in the interview notes of the Government's case agent. ECF 85. Specifically, the Defendant cites two narrow entries in the case agent's notes in which it is written that Officer Langjahr saw the firearm at issue in this case and alerted his fellow officers. The Defendant then asks this Court to make the leap that these notes reflect something that was truly said by one of the officers, even though no witness has ever corroborated that. The Defendant then asks this Court to find that these notes should be credited over the consistent testimony of all the officers involved in this case. Finally, the Defendant then asks that the Court find that this alleged discrepancy is so major that it should cause the Court to find *all* of the officers incredible, and thereby dismiss the entire case.

The Defendant's motion is groundless, and should be rejected for several reasons.

First, suppression is not warranted here because the officers have testified consistently that Officer Kostoplis saw the gun and alerted his fellow officers. Indeed, the notion that Kostoplis saw the gun was first reported in the Statement of Probable Cause, which was written just hours after the arrest. And that fact has been consistently reiterated and reconfirmed in sworn testimony by the officers both at the suppression hearing and at trial. At no point have any of the officers wavered in their testimony on this point. Nor have any of the officers ever adopted (or even been shown) the case agent's notes on which the defense's motion relies. The only testimony that matters is that of the officers who made the arrest in this case. And on this point about which officer initially saw the gun, their testimony has been consistent and uniform.

jurors could not reach a unanimous verdict, the Court declared a mistrial. This matter is currently set to be retried May 12-15, 2014.

In anticipation of retrial, the Defendant has filed a motion to reconsider Judge Hollander's denial of his suppression motion. The sole argument made by the Defendant is that this Court should reverse the findings of Judge Hollander based on isolated hearsay evidence in the interview notes of the Government's case agent. ECF 85. Specifically, the Defendant cites two narrow entries in the case agent's notes in which it is written that Officer Langjahr saw the firearm at issue in this case and alerted his fellow officers. The Defendant then asks this Court to make the leap that these notes reflect something that was truly said by one of the officers, even though no witness has ever corroborated that. The Defendant then asks this Court to find that these notes should be credited over the consistent testimony of all the officers involved in this case. Finally, the Defendant then asks that the Court find that this alleged discrepancy is so major that it should cause the Court to find *all* of the officers incredible, and thereby dismiss the entire case.

The Defendant's motion is groundless, and should be rejected for several reasons.

First, suppression is not warranted here because the officers have testified consistently that Officer Kostoplis saw the gun and alerted his fellow officers. Indeed, the notion that Kostoplis saw the gun was first reported in the Statement of Probable Cause, which was written just hours after the arrest. And that fact has been consistently reiterated and reconfirmed in sworn testimony by the officers both at the suppression hearing and at trial. At no point have any of the officers wavered in their testimony on this point. Nor have any of the officers ever adopted (or even been shown) the case agent's notes on which the defense's motion relies. The only testimony that matters is that of the officers who made the arrest in this case. And on this point about which officer initially saw the gun, their testimony has been consistent and uniform.

Moreover, aside from not being supported by the officers' testimony, the case agent's notes should be discounted even more because they are inadmissible hearsay. Because they have never been adopted by the officers, the case agent's notes are hearsay and should be inadmissible at retrial. See United States v. Montanez, 202 F.3d 434, 440 (1st Cir. 2000) (holding that FBI agent's witness interview notes were inadmissible at trial where the witness never adopted the alleged statements in the notes). This provides yet another reason why this Court should accord little or no weight to the notes here for purposes of this motion.

Second, even if the case agent's notes are considered here, and even if the Court were to find that they demonstrate a minor discrepancy in one witness's statement about which officer initially saw the gun, this still does not change the operative facts of this case, i.e. a gun was recovered from the possession of the Defendant, notwithstanding which officer saw it first. Nor does it support the Defendant's claim in this motion that his Fourth Amendment rights were somehow violated. This Court has made clear that there is no Fourth Amendment violation, and hence suppression is not appropriate, simply where there are minor discrepancies in the testimony which do not go to the operative facts of the case. See United States v. Moore, 2009 WL 1585851 at *1 (D. Md. June 4, 2009) (Titus, J.) (refusing to reconsider suppression ruling even where there were discrepancies between the motions hearing testimony of case agent and the trial testimony of the officer about where in the car the ammunition was found); United States v. Williams, 2005 WL 1902490 at *3 (D. Md. Aug. 9, 2005) (Bennett, J.) (denying motion to suppress based on minor discrepancies between officer's testimony and case agent's reports).

In sum, the Defendant has failed to highlight any material reason, or cite any case, which would require this Court to find a Fourth Amendment violation here and reverse the findings of Judge Hollander. As such, this Court should decline to reopen the suppression issue, and deny the

Defendant's motion.  See United States v. Johnson, 2004 U.S. App. LEXIS 13831 (4th Cir. July 6, 2004) (holding that the district court properly exercised its discretion in refusing to reopen the suppression hearing or reconsider its denial of the suppression motion).

## II.   STATEMENT OF FACTS

This Court is familiar with the facts from the previous trial in this matter, and hence the Government will restate the facts here only in brief.

On January 19, 2013, several Baltimore City Police Officers were working a crime suppression initiative in northeast Baltimore.  The area had recently seen a surge in violent crime, including a large amount of armed robberies.

At approximately 8:00 p.m., Officers James Edge, James Kostoplis, and Steven Langjahr, working with and under the direction of Sergeant Wayne Jenkins, drove their marked police vehicle into an apartment complex parking lot located in the 4900 block of Gunther Road in Baltimore.  The officers saw a 2000 Plymouth van (MD Tag No. 5AR3394) parked in front of 4905 Gunther Road.  The van was parked head-in, the engine was running, the headlights were on, and the driver's door was standing open.  As the officers drove by the vehicle, they observed a man (later identified as the Defendant) standing just outside the driver's door, but he was hunched over and leaning across the driver's side seat.  The man's head and hands were focused on the console area between the front seats of the vehicle.

As the officers drove past the van, they noticed that the vehicle's right rear taillight was broken.  The officers then parked their vehicle a few parking spots beyond where the van was parked.  Neither the Defendant nor the van were boxed in.  Nor did the officers activate any emergency lights or sirens at that time.

The officers then got out of their vehicle and approached the Defendant on foot.  Two

officers approached the Defendant on the driver's side of the van, while the other two officers placed themselves on the passenger side of the van.  The officers were in uniform.  As the officers approached, the Defendant's head and hands were still focused on the console area between the front seats of the van.

Officer Edge then greeted the Defendant in a conversational tone.  Upon hearing the greeting, the Defendant turned toward Officer Edge.  As he turned toward Officer Edge, several of the officers saw that the Defendant had in his hands a bundle of what appeared to be clothing.  Upon seeing the officers, the Defendant then wheeled back toward the van and flung the clothing into the van.  Several of the officers heard a thud as the clothing and its contents struck the passenger side door and came to rest in the front passenger seat.

At that point, Officer Kostoplis looked through the window of the van at the passenger seat and saw that the clothing had unfurled, revealing a firearm that had been concealed within.

The Defendant was subsequently placed under arrest.  During a pat-down search, one gel cap of what appeared to be heroin was recovered from the Defendant's front left jacket pocket.

While the Defendant was being secured and placed under arrest, Officer Kostoplis took steps to secure the firearm and make it safe by removing the bullets from the firearm.  Specifically, Officer Kostoplis walked around the van and reached in through the driver's side door (which had remained open) and moved the clothing (a pair of blue shorts) and the firearm from the front passenger seat to the front driver's seat.  At that point, he placed gloves on and proceeded to take photographs of the firearm, the blue shorts, and the van itself.

After the serial number had been retrieved from the firearm, Officer Edge ran a routine check, and discovered that it had been reported stolen from Pennsylvania.  Edge also ran a check on the Defendant and learned that he had several prior felony convictions for manufacturing and

distributing controlled dangerous substances.  Finally, Edge issued the Defendant Safety Equipment Repair Order No. 8942649 for the broken taillight.

Just a few hours after making the arrest, Edge wrote the Statement of Probable Cause that supported the charges issued against the Defendant.  See Exhibit 1.  On the issue of how the gun was recovered, Edge stated that "Kostoplis looked through the front passenger window, and was able to see that a black revolver had been concealed inside the rolled up pair of pants."  Id.

### III.   PROCEDURAL HISTORY

On August 7, 2013, Defendant filed two motions to suppress.  See ECF Nos. 17, 18.  The Defendant moved to suppress all the evidence that was obtained following his arrest, including the gun, the ammunition, the blue shorts, and the gel cap of heroin.  The motion was based on the allegation that the police officers "did not have any reasonable suspicion or probable cause to believe that Mr. Jones was, or had been, involved in criminal activity at the time of his arrest." See ECF No. 17 at 1.  The Defendant also moved to suppress any statements made by the Defendant on the same grounds, alleging that any statements obtained were the fruit of an unlawful arrest.  See ECF No. 18 at 1-2.

On November 22, 2013, Judge Hollander conducted an evidentiary hearing.  See ECF 39. During that hearing, Judge Hollander heard testimony from Sergeant Jenkins, Officer Edge, and Officer Kostoplis.  See Exhibit 2 (Transcript of Suppression Hearing).[1]  Each officer was also subject to cross-examination by the defense.  Id.  During this hearing, each officer testified that it was Officer Kostoplis who saw the firearm and alerted his fellow officers.  See id. at 11:10 (Jenkins testimony); id. at 65:10 (Edge testimony); id. at 89-90 (Kostoplis testimony).

On December 4, 2013, after hearing argument from counsel, Judge Hollander denied the

---

[1]   Officer Langjahr was available at the hearing, but none of the parties called him as a witness.

Defendant's motion.  See ECF Nos. 47, 48.  Specifically, based on her observations of the officers and their testimony, Judge Hollander found that the officers were credible.  See Exhibit 3 at 75-76.  In reaching this finding, Judge Hollander stated that:

> **I did regard the officers as credible and earnest in their attempts to recall the events.   And I thought they were candid, frankly.**

Id. (emphasis added).   Indeed, Judge Hollander made this finding even though she noted that there were some discrepancies in the officers' recall of events.  Id.   Furthermore, Judge Hollander rejected all of the legal arguments made by the defense in their motion.  Id.   Because the motion was denied, the matter then proceeded to trial.

At the trial, the officers testified in a manner materially consistent with the testimony they gave at the suppression hearing.   Specifically, as to the issue of how the firearm was discovered, all the officers testified that Officer Kostoplis looked through the window of the minivan and saw the gun.  See Exhibit 4 at 43:21 (Jenkins direct testimony); id. at 107:2 (Edge direct testimony); Exhibit 5 at 260-61 (Kostoplis direct testimony).[2]  Moreover, and as important here, during cross-examination, each of the officers was asked whether they ever indicated to the case agent that it was Langjahr who discovered the gun, and none of the officers indicated they did.  See Exhibit 4 at 82-83 (Jenkins cross-examination testimony); Exhibit 5 at 182-83 (Edge cross-examination testimony); Exhibit 5 at 280 (Kostoplis cross-examination testimony).[3]

During its case, the defense called the Government's case agent, Detective Edgar Allen, to the stand.  The defense elicited testimony about the case agent's handwritten notes taken during

---

[2]   As with the suppression hearing, Officer Langjahr was available for trial, but none of the parties called him as a witness.

[3]   It should be noted that the defense never once showed the officers the case agent's notes to ask them to authenticate whether they were accurate.  See generally Exhibits 4 and 5.

7

one of the meetings with one of the officers.  See Exhibit 5 at 336-45.  During his testimony, Detective Allen testified that "nobody literally said to me [']Langjahr said gun.[']  Everybody, when given a name, [said] it was Officer Kostoplis [who] said gun."  Id. at 341:21.  Detective Allen further indicated how he did not know the officers when he first was investigating the case, and hence was unfamiliar with their names.  Id. at 339.  Indeed, Detective Allen admitted that even during trial he mixed up Officer Kostoplis with another officer.  Id. at 341:10.

On December 18, 2013, after both sides rested, the case was given to the jury.  After the jury was not able to reach a unanimous verdict, the Court declared a mistrial.  The matter is set to be retried May 12-15, 2014.

On February 22, 2014, the Defendant filed a motion for reconsideration of Judge Hollander's denial of the motion to suppress.  ECF 85.  The sole basis on which the Defendant seeks this relief is that he claims that Detective Allen's notes contain a discrepancy as to which officer first discovered the firearm.  And as a result, the Defendant argues that this Court should reverse Judge Hollander and find all of the officers are incredible, and hence dismiss the case.  Defendant cites no case in support of this relief, nor does he cite any case which would demonstrate this constitutes a Fourth Amendment violation.  Id.  As detailed below, this motion is groundless and should be denied.

### IV.  ARGUMENT

**A.  Suppression Is Not Warranted Where All The Officers Have Testified Consistently About The Manner In Which The Defendant's Gun Was Discovered.**

As this Court has noted, the Federal Rules of Criminal Procedure do not expressly permit motions to reconsider denials of motions to suppress.  United States v. Srivastava, 476 F. Supp. 2d 509, 511 (D. Md. 2007).  However, notwithstanding that there is no rule that permits them,

this Court has nevertheless considered such motions by analogizing them to motions to alter or amend which can be filed under Federal Rule of <u>Civil</u> Procedure 59.  <u>Id.</u>  Under this standard, a Court's prior ruling should not be disturbed unless there is:  (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) some clear error of law.  <u>Id.</u>  The Fourth Circuit has held that reconsideration is "'an extraordinary remedy'" and should only be awarded "'sparingly.'"  <u>Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted).

     Here, there is no basis on which to grant the extraordinary relief sought by the Defendant. The sole ground on which Defendant asks this Court to reverse Judge Hollander is the defense's allegation that Detective Allen's notes somehow contain a discrepancy about which officer originally saw the gun at issue in this case.  The Defendant is not claiming there is some intervening change in law, nor is the Defendant claiming some error of law.  Rather, the Defendant's sole claim is based on "new evidence" in the form of two narrow entries in Detective Allen's notes from a meeting with one single witness.

     The problem with this argument is that no witness has ever corroborated the veracity of these notes; and in fact, each of the officers has testified consistently as to which officer initially saw the gun.  As detailed above, just hours after the Defendant's arrest, on January 20, 2013 at 6:43am, Officer Edge wrote up the Statement of Probable Cause which stated clearly that Officer Kostoplis saw the gun through the window of the Defendant's minivan.  Exhibit 1.  Then, at the suppression hearing, Sergeant Jenkins, Officer Edge, and Officer Kostoplis all testified consistently that Kostoplis saw the gun and alerted his fellow officers.  <u>See</u> Exhibit 2 at 11:10 (Jenkins testimony); <u>id.</u> at 65:10 (Edge testimony); <u>id.</u> at 89-90 (Kostoplis testimony).  Likewise, at trial, each of these officers again testified that Officer Kostoplis saw the gun and alerted his

9

fellow officers.  See Exhibit 4 at 43:21 (Jenkins direct testimony); id. at 107:2 (Edge direct testimony); Exhibit 5 at 260-61 (Kostoplis direct testimony).

Furthermore, not only have the officers testified consistently that it was Kostoplis who first discovered the gun, none of the officers have ever indicated they said it was Langjahr. Specifically, during cross-examination, each of the officers was asked whether they ever indicated to Detective Allen that it was Langjahr who discovered the gun, and none of the officers indicated they did so.  See Exhibit 4 at 82-83 (Jenkins cross-examination testimony); Exhibit 5 at 182-83 (Edge cross-examination testimony); Exhibit 5 at 280 (Kostoplis cross-examination testimony).

Finally, when Detective Allen was called to the stand, he likewise testified that none of the officers indicated to him that it was Langjahr; rather, he confirmed that all of the officers were consistent that Officer Kostoplis first saw the gun.  See Exhibit 5 at 341-43.  Detective Allen admitted that the reference to Langjahr was just a mistake in his notes.  See id. at 340.  He further testified to how he even "mixed up the officers" at trial.  Id. at 341:14.

Accordingly, while the defense asks this Court to credit these notes as somehow being a true reflection of something that was said by one of the officers, that argument is contrary to all the evidence before this Court.  The fact of the matter is that all of the officers' testimony has been uniform, unwavering, and consistent from the drafting of the Statement of Probable Cause through the suppression hearing and through trial; and the case agent himself has testified that the notes are mistaken.  As such, there is simply no basis on which this Court should give any weight to the veracity of the case agent's notes.

Furthermore, this Court should discount the value of the case agent's notes even further

because they are nothing more than inadmissible hearsay, and should not be admissible at retrial.[4] Any statements in Detective Allen's notes are unquestionably hearsay because they are out of court statements being offered by the defense for their truth. See Fed. R. Evid. 801(c). However, given that none of the officers have ever corroborated these notes or adopted them as their own, the notes are inadmissible hearsay. See United States v. Montanez, 202 F.3d 434, 440 (1st Cir. 2000) (holding that FBI agent's witness interview notes were inadmissible at trial where the witness never adopted the alleged statements in the notes); United States v. Morrison, 2013 WL 1728931 at *1-2 (E.D.N.Y. Apr. 22, 2013) (granting government's motion to exclude as inadmissible law enforcement's interview notes of witness, and holding that the notes would not be admitted in toto unless the defendant demonstrated a non-hearsay purpose for which portions of the notes could be admitted). Nor can these notes be used to attempt to impeach any of the officers because, again, the officers have never adopted these notes as their own, and hence these notes cannot be used as a prior inconsistent statement. See Carnell Const. Corp. v. Danville Redevelopment & Housing Authority, ___ F.3d ___, 2014 WL 868620 at *9-11 (4th Cir. Mar. 6, 2014) (holding that it was reversible error for district court to permit witness to be impeached by statements in a document he had not signed and had not ever adopted); United States v. Saget, 991 F.2d 702, 710 (11th Cir.1993) (holding that defense counsel should not have been permitted to attempt to impeach government witness based on statements in FBI agent's summary report where the witness had not adopted the statements in the report as his own) ("[W]e conclude that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own.").

---

[4] The Government will be filing a separate motion in limine with regard to these notes according to the Court's Scheduling Order. See ECF 80.

In short, Detective Allen's notes are not admissible, nor are they even permissible impeachment material, because the officers have never adopted them, and indeed their testimony and that of the case agent have all demonstrated that the notes are mistaken. As such, given that the defense's motion relies exclusively on these notes which have no evidentiary value, this only further demonstrates that suppression is not warranted here.[5]

In sum, the officers' testimony has been uniform and consistent throughout all stages of this proceeding that Officer Kostoplis discovered the gun. Their testimony alone is what matters here on this suppression motion. And in any event, the case agent's notes on which the defense relies are inadmissible and simply mistaken in their reference to Langjahr. As such, there is simply no basis to find a Fourth Amendment violation here, and hence there is no basis to grant the Defendant the extraordinary relief he seeks.

**B.      Alternatively, Even If The Court Finds That The Case Agent's Notes Do Create A Discrepancy With One Officer's Testimony, This Still Does Not Amount To A Fourth Amendment Violation, And Hence Suppression Is Still Not Warranted.**

As detailed above, the officers have never adopted Detective Allen's notes, and have never testified in a discrepant manner on the issue of whether it was Officer Kostoplis who first discovered the gun. However, even if the Court were to indulge the Defendant's argument and somehow impute what is in the notes to one of the officers, this would still only create a minor discrepancy in one witness's testimony which even still does not undermine the operative facts of this case. As such, Defendant cannot show any violation of his Fourth Amendment rights,

---

[5] To be clear, the Governmental recognizes that hearsay may be considered in considering a motion to suppress. <u>United States v. Matlock</u>, 415 U.S. 164, 175-76 (1974). However, given that the sole basis on which the Defendant seeks reconsideration is inadmissible evidence, the Government respectfully submits that the Defendant has not met his burden under Rule 59 to come forward with admissible "new evidence" such that he merits the extraordinary relief of reconsideration.

and hence suppression is not appropriate.

The Supreme Court has explained that suppression is only warranted where the Court finds a violation of the Fourth Amendment.  Davis v. United States, 131 S. Ct. 2419, 2426-27 (2011).  Suppression is "'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search;" rather, the sole basis on which suppression can be ordered is to deter future Fourth Amendment violations.  Id. (citation omitted).  And even when suppression might foster some deterrence, it can only be awarded as a "'last resort'" when the benefits of deterrence would outweigh the heavy costs of suppression.  Id. (citation omitted).  Recognizing this dynamic, the Fourth Circuit has held that to prevail against a motion for suppression, the Government only needs to prove the relevant facts by a preponderance of the evidence.  United States v. Helms, 703 F.2d 759, 766 (4th Cir. 1983).

Against these standards, this Court has repeatedly considered, and denied, suppression motions based on claims that there were discrepancies between the testimony of government witnesses.  For example, in United States v. Williams, the defense there "place[d] great emphasis on discrepancies in the record between [DEA] Agent Schmidt[']s affidavit, DEA–6 reports, and [Baltimore County Police] Officer Carrington's testimony."  2005 WL 1902490 at *3 (D. Md. Aug. 9, 2005).  Specifically, the defense sought suppression on the ground that Agent Schmidt stated in his report that Officer Carrington discovered the drugs during "a search incident to arrest," whereas Officer Carrington in his testimony denied having arrested the defendant before searching him, and rather testified that he discovered the drug during a Terry pat-down search.  Id.  The defense also raised other inconsistencies, and claimed that suppression was therefore warranted.  Id.  Judge Bennett denied the suppression motion, however, finding that any discrepancies from the report were "nothing more than harmless clerical error."  Id.

13

This finding is consistent with the determinations of numerous other courts that suppression is not warranted simply based on minor discrepancies which do not go to the operative facts of the case. See United States v. Mitchell, 388 Fed. Appx. 328, 333 (4th Cir. 2010) (affirming denial of suppression motion even though "there were some discrepancies between Hammons' testimony and the written report"); United States v. Moore, 2009 WL 1585851 at *1 (D. Md. June 4, 2009) (Titus, J.) (refusing to reconsider suppression ruling even where there were discrepancies between the motions hearing testimony of a case agent and the trial testimony of the officer about where in the car the ammunition was found); see also United States v. Jones, 364 Fed. Appx. 205 (6th Cir. 2010) (affirming denial of motion to suppress because although the officers' testimony at the suppression hearing and trial had some discrepancies, the testimony was consistent "on the critical issues").

This Court should apply these precedents and deny the Defendant's motion here. The sole basis on which Defendant seeks reconsideration is this argument that somehow there is a discrepancy between one officer's testimony and what is in Detective Allen's interview notes as to which officer, Kostoplis or Langjahr, first saw the gun. The thin reed on which Defendant bases his entire argument consists of two narrow entries from Detective Allen's notes: (1) the note that says "[s]aw Lanjahr [sic] looking in passenger window;" and (2) the note that says "Lanjahr [sic] sees gun & shouts 'gun.'" See Docket Entry No. 85 at Exhibit 1. There are several problems with this argument.

First, these notes do not on their face create any discrepancy at all. It is perfectly possible for both Kostoplis and Langjahr to look through the passenger window and see the firearm and alert their fellow officers. Indeed, Officer Edge testified it is possible that Langjahr repeated what Kostoplis said. See Exhibit 5 at 183 ("Because one officer says something, it

doesn't mean that another officer didn't say the same thing. If Officer Kostoplis was the first person to yell gun, which he was, that doesn't mean that Officer Langjahr didn't repeat it to make sure that myself and Sergeant Jenkins both heard it."). And although Edge testified he could not recall if that in fact happened, the defense made the strategic decision both at the suppression hearing and at trial not to call Langjahr as a witness to find out if that was the case. As such, while the defense's motion entirely relies on there being a discrepancy between Detective Allen's notes and the testimony, it is not clear that there is any discrepancy at all. Because it is the Defendant's burden to present sufficient "new evidence" meriting reconsideration, the fact that there is no concrete discrepancy created by the two passages they cite demonstrates that their motion is not well-supported and should be denied.

Second, even assuming a discrepancy exists, the discrepancy does not go to the operative facts of this case. This case is straightforward: on January 19, 2013, the Defendant was found to be in possession of a firearm. Because he had previously been convicted of a felony, this is a violation of federal law, 18 U.S.C. § 922(g). To find whether the Defendant committed this crime, it simply does not matter which officer first saw the firearm. The only fact that matters is whether a firearm was recovered after being seen in the possession of the Defendant. As such, even to the extent there are discrepancies in some of the minor details surrounding the arrest, because there are no inconsistencies in the operative facts (i.e. that the Defendant was seen in possession of gun), suppression is simply not warranted.

Moreover, even looking at the notes in toto and not just at the two small snippets that are referenced by the defense, it is clear that the notes corroborate the testimony of the officers. Specifically, the notes detail the broken tail-light seen by the officers; the greeting given by Edge; the Defendant's act of throwing the gun back into the car after seeing the officers; and

15

Sergeant's Jenkins' reading of Miranda rights.  <u>See</u> Docket Entry No. 85 at Exhibit 1.  Indeed, the notes also reflect Detective Allen's notation of one of the officers stating "K-stop said gun." <u>Id.</u>  So, while the notes are not admissible and are not relevant given the testimony of the officers, to the extent the Court finds they have any probative value, it is clear that they support the officers' testimony on the "critical issues."

Accordingly, the thin reed on which Defendant's motion is based does not support this Court granting Defendant the extraordinary relief he seeks.  And indeed, because the Defendant's motion is based on such a thin reed of inadmissible evidence that does not contain a facial inconsistency and that only goes to a minor detail of this case, there is no basis on which this Court should reopen the suppression hearing and reverse Judge Hollander's findings that the officers were credible and that the Government had met its burden by a preponderance of the evidence.  <u>United States v. Johnson</u>, 2004 U.S. App. LEXIS 13831 (4th Cir. July 6, 2004) (holding that the district court did not abuse its discretion in refusing to reopen the hearing or reconsider its denial of the suppression motion).

## IV.   CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motion for reconsideration of Judge Hollander's denial of the Defendant's suppression motion.

    Respectfully submitted,

    Rod J. Rosenstein
    United States Attorney


By:    /s/
    Jason D. Medinger (Bar No. 28470)
    Bonnie S. Greenberg

Assistant United States Attorneys
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800